### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J. G. BOSWELL TOMATO COMPANY - KERN, LLC (formerly known as RIO BRAVO TOMATO COMPANY, LLC), a California limited liability company,**<br><br>              **Plaintiff,**<br><br>   **v.**<br><br>**PRIVATE LABEL FOODS, INC., a New York corporation; PRIVATE LABEL FOODS OF ROCHESTER, INC., a New York corporation, and DOES 1 to 50, inclusive,**<br><br>         **Defendants.** | **1:08-CV-00620-OWW-SMS**<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, AND, IN THE ALTERNATIVE, GRANTING TRANSFER VENUE (Doc. 7)** |

### 1.   INTRODUCTION

Plaintiff J.G. Boswell Tomato Company-Kern, LLC, ("Boswell") alleges three breach of contract claims against specially appearing Defendant Private Label Foods of Rochester Inc. (Erroneously sued as Private Label Foods, Inc., a dissolved corporation)("Private Label").  Private Label moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Alternatively, Private Label moves for an order to transfer this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a) for convenience of the parties and witnesses.

1

1

2.   <u>JURISDICTION</u>

2    Removal jurisdiction to the federal court is invoked under

3  28 U.S.C. 1442; or diversity of citizenship 28 U.S.C. 1332 based

4  on the citizenship of the parties in different states, and the

5  amount in controversy in excess of $75,000.00.  Plaintiff is a

6  California LLC, and Defendant is a New York corporation.  The

7  amount in controversy exclusive of interest and costs exceeds

8  $75,000.00.

9

3.   <u>BACKGROUND</u>

10   A.   <u>Procedural History</u>

11   Boswell originally filed its Complaint on March 21, 2008 in

12  the Superior Court for the State of California in and for the

13  County of Kern.  (Doc. 2, Compl.)  Private Label made a special

14  appearance and removed this case to Federal Court on May 2, 2008.

15  (Doc. 2, Notice of Removal.)  Private Label then filed a Motion

16  to Dismiss, or, in the alternative, to Transfer Venue on May 9,

17  2008.  (Doc. 7, Def.'s Mot. Dismiss)  Boswell filed an Opposition

18  on July 3, 2008.  (Doc. 11, Pl.'s Opp'n.)  Private Label filed a

19  Reply to Boswell's Opposition on July 14, 2008.  (Doc. 13, Def.'s

20  Reply.)

21   B.   <u>Factual History</u>

22   Plaintiff Boswell is a limited liability company organized

23  under the laws of the State of California, which alleges three

24  breach of contract actions against Defendant Private Label, a New

25  York corporation with its principle place of business in

26  Rochester, New York.  (Compl. ¶ 1; Pl.'s Opp'n 2.)

27   Boswell, a supplier of processed tomato products, is located

28  in Buttonwillow, Kern County, California.  (Pl.'s Opp'n 1.)

Defendant Private Label Foods is a New York corporation, conducting business in Rochester, New York.  (Compl. ¶ 2; Def.'s Mot. Dismiss 1.)  Private Label manufactures and sells "private label" food products such as salad dressings, cocktail sauces, marinades, barbeque sauces, pasta sauces, salsa, wing sauces, and hot sauces.  (Def.'s Mot. Dismiss 1.)  Private Label purchases processed tomato products for the production of its products. (Pl.'s Opp'n 1-2.)  From 2003 through 2006, Defendant Private Label entered into several contracts with Plaintiff Boswell to purchase over $2.5 million worth of processed (sliced and diced tomatoes and tomato paste) tomato product.  (Pl.'s Opp'n 2.)

This dispute arises out of the last three contracts entered into between the parties in the 2006-2007 packing season.  (Pl.'s Opp'n 2.)  Boswell alleges Private Label breached the contracts by refusing to pay the amounts owed for tomato products sold and delivered, resulting in total alleged damages suffered by Boswell in the amount of $633,127.97.  (Compl. ¶¶ 6-7.)

Boswell alleges the parties entered into a written agreement on March 31, 2006, in Kern County, California for the sale/purchase of 1,500,000 pounds of tomato paste product for $.308 per pound, for delivery by June 30, 2007, F.O.B. Buttonwillow, California.  (Compl. ¶¶ 8-13, Ex. A.)  This contract included a $90 deposit for the shipping bins provided by Boswell which was refundable upon return of the bins in "useable" condition.  (Compl. Ex. A)  Boswell alleges it has performed all conditions, covenants, and promises required on its part; and that Private Label has failed to pay $1,560.10 as per the terms of the agreement.  (Compl. ¶¶ 11-13.)

Boswell alleges the parties entered into an additional written agreement on March 31, 2006, in Kern County, California for the sale/purchase of 1,500,000 pounds of tomato paste product at $.333 per pound, for delivery by June 30, 2007, F.O.B. Buttonwillow, California.  (Compl. ¶¶ 14-16, Ex. B.)  This contract included a $90 deposit for the shipping bins provided by Boswell which was refundable upon return of the bins in "useable" condition.  (Compl. Ex. B.)  Boswell alleges it has performed all conditions, covenants, and promises required on its part and Private Label has failed to pay $172,048.72 as per the terms of the agreement.  (Compl. ¶¶ 17-19.)

On August 21, 2006, Boswell alleges the parties entered into a third written agreement in Kern, County, California for the sale/purchase of tomato paste product for delivery by June 30, 2007, F.O.B. Buttonwillow, California.  (Compl. ¶¶ 14-16, Ex. B.) This contract included a $90 deposit for the shipping bins provided by Boswell which was refundable upon return of the bins in "useable" condition.  (Compl. Ex. B)

Boswell alleges it has shipped 77,639 pounds of tomato paste product plus bins for which Private Label still owes $4,245.00. (Compl. ¶ 23.)  Boswell alleges it performed all conditions, covenants, and promises required on its part and Private Label failed to take delivery of a remaining 2,922,361 pounds of product before the June 30, 2007 deadline, for which Boswell had to mitigate damages by allocating the product to other purchasers for a price/market differential of $.15 per pound.  (Compl. ¶¶ 24-25.)  Boswell alleges it lost $438,354.15 as a result, and additionally, Private Label failed to pay for or return 188 bins

**4**

pursuant to the contract resulting in a loss of $16,920.00.
(Compl. ¶¶ 25-26.)  Boswell seeks compensatory damages for breach
of these three contracts in the sum of $633,127.97 plus interest
on this amount from and after November 10, 2007.  (Compl. ¶ 26.)

    Defendant Private Label alleges that in 2003, Plaintiff
Boswell hired a New York Sales Broker to obtain Private Label's
business.  (Def.'s Mot. Dismiss 2.)  Private Label negotiated
with this broker in New York and after a sale Private Label paid
the broker a commission.  (Def.'s Mot. Dismiss 2.)  At about this
time Boswell sent its president and vice-president to New York to
tour Private Label's facility and solicit the sale of Boswell's
products.  (Def.'s Mot. Dismiss 2.)  Additionally, Boswell's
vice-president visited on another occasion on behalf of Boswell.
(Def.'s Mot. Dismiss 2.)  Private Label executed additional
agreements with Boswell, continuing to use the New York broker in
the negotiations.  (Def.'s Mot. Dismiss 2.)  Boswell sent its
East Coast Sales Manager, John Nestvogel, to New York to solicit
business from Private Label on at least six occasions.  (Def.'s
Mot. Dismiss 2.)  Mr. Nestvogel's name is on the August 14, 2006
contract attached to the Complaint as Exhibit C.  (Compl. Ex. C.)

    Private Label contends the contracts were executed in New
York, after which it faxed or mailed the contracts to California.
(Def.'s Mot. Dismiss 2.)  Private Label states it has never had a
location for the transaction of business outside of New York.
(Def.'s Mot. Dismiss 1.)  Private Label has never had in
California, any agents, employees, officers, directors, physical
offices, plants, bank accounts, tangible property, or contact
with persons located in California to act on its behalf with

**5**

respect to marketing, distributing, or servicing any of Private Label's goods or services.  (Def.'s Mot. Dismiss 1-2.)  Private Label representatives have never visited California in connection with the contracts at issue.  (Def.'s Mot. Dismiss 2.)  Private Label has not attended any trade shows, expositions, or conferences in California and conducts no advertising or marketing targeted or purposefully directed at potential customers in California, and its principals have never traveled to California to conduct business on behalf of Private Label.  (Def.'s Mot. Dismiss 2-3.)  Private Label is not and has never been registered with the California Secretary of State to conduct business in California.  (Def.'s Mot. Dismiss 3.)

Private Label disputes the amount of damages sought in the complaint, but contends that the dispute should not be litigated in California because the court lacks *in personam* jurisdiction over Private Label and/or because the Eastern District of California is an inconvenient forum.  (Def.'s Mot. Dismiss 3.)

### 4.   STANDARD OF REVIEW

**A.   Personal Jurisdiction**

Plaintiff bears the burden of establishing that the Court has personal jurisdiction.  *See Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys. v. Jobar Int'l*, 551 F.2d 784, 787 (9th Cir. 1977). The court reviews the pleadings and affidavits, upon which the plaintiff need only make a prima facie showing that personal

jurisdiction exists.  *See Graphic Controls Corp. v. Utah Med. Prod.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).  The court construes the pleadings and affidavits in the light most favorable to the plaintiff.  *See id.*  Personal jurisdiction exists if permitted by California's long-arm statute and federal due process.  *See id.* at 1385.  Pursuant to Cal. Code of Civ. P. § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits i.e. to the extent that maintenance of a suit in California would "not offend traditional notions of fair play and substantial justice."  Cal. Civ. Proc. Code § 410.10 (2008); *Int'l Shoe Co. v. State of Wash., Office of Unemployment*, 326 U.S. 310, 316 (1945).  Two categories of jurisdiction exist: general or specific jurisdiction.  *See Lake v. Lake*, 817 F.2d 1416, 1420-21 (9th Cir. 1987).

**B.   Venue**

Pursuant to U.S.C. § 1404(a), the decision whether to transfer venue is at the discretion of the district court.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Under § 1404(a), the district court considers each of the factors: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2008); *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

**5.   PERSONAL JURISDICTION ANALYSIS**

**A.   General Jurisdiction**

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or

**7**

'continuous and systematic.'"  *Panavision Int'l., L.P. v.*

*Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16

(1984)).  Defendant Private Label argues it is not subject to

general jurisdiction in California for multiple reasons.  These

reasons include Private Label's incorporation in New York; its

principle place of business in New York; it has no agents,

officers, directors, employees, or property in California; it has

not registered with the California Secretary of State; it has no

continuous or systematic contacts with California; and it has

never conducted any advertising or marketing purposefully

directed to, or targeted at, California residents.  Because

Private Label's contacts have been sporadic and minimal,

Plaintiff Boswell does not claim Private Label is subject to

general jurisdiction.  The issue is whether Private Label is

subject to personal jurisdiction on the basis that specific

jurisdiction is present.

**B.**   <u>Specific Jurisdiction</u>

Specific jurisdiction is analyzed under a three part test:

> **(1)   Purposeful Availment: the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws;**
>
> **(2)   Arising Out Of Forum-Related Activities: the claim must be one which arises out of or relates to the defendant's forum-related activities; and**
>
> **(3)   Reasonableness: the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.**

*Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Physical presence is not required to establish specific jurisdiction. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir. 1986) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-77 (1985)); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984). "[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting *Thomas. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)).

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder*, 465 U.S. at 789 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980). "'An out-of-state act having an effect within the state may be sufficient to support jurisdiction' in a non-tort situation." *Haisten*, 784 F.2d at 1397-398 (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir. 1978)(finding jurisdiction where defendant assumed personal liability in the event of default on a contract expressly subject to jurisdiction in the forum state - the contract was expressly subject to interpretation under California law by California courts)). "Questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." *Forsythe*, 576

F.2d at 783 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952).

### 1.   Purposeful Availment

In this first prong, the term "purposeful availment," is often used in shorthand fashion, to include both purposeful availment and purposeful direction.  *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004).  Because this is a contract dispute, and not a tort claim, the "purposeful availment" analysis is applied.  *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  "The purposeful availment standard requires more than foreseeability of causing injury in another state."  *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (citing *Burger King*, 471 U.S. at 474).  "The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  This prong "prevents defendants from being haled into a jurisdiction through 'random,' 'fortuitous,'or 'attenuated' contacts."  *Id.* (quoting *Burger King*, 471 U.S. at 475).

This involves an inquiry into "whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract in the forum state."  *Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger*, 374 F.3d at 802).  These actions reflect a non-resident defendant "purposefully avail[ing] itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  "In return for these 'benefits and protections,' a defendant must-as a quid pro quo-'submit to the burdens of litigation in that forum.'" *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. at 476).

Factors the Supreme Court has established that must be considered in their totality to determine whether a defendant purposefully established minimum contacts (purposefully availed itself) with a forum are as follows:

(1) prior negotiations;

(2) contemplated future consequences;

(3) the terms of the contract; and

(4) the parties' actual course of dealing.

*Burger King*, 471 U.S. at 479.  Private Label purposefully availed itself to California jurisdiction.

### A.   Prior Negotiations

"[W]ith respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Burger King*, 471 U.S. at 473, (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

When considering contract negotiations courts typically consider the following factors:

(1) extensiveness of negotiations;

11

1          **(2) location of negotiations; and**

2          **(3) whether the defendant traveled to the forum.**

3  *Naumes Inc. v. Alimentos Del Caribe*, 77 F. Supp. 2d 1158, 1162

4  (D. Or. 1999) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d

5  1313, 1320 (9th Cir. 1998)).  No one factor is dispositive.  *Id.*

6                    **1.   Extensive Negotiations**

7          **Plaintiff Boswell argues that it engaged in extensive**

8  **negotiations with Defendant thus demonstrating purposeful**

9  **availment by Defendant Private Label.  The parties engaged in**

10 **negotiations for over a dozen contracts from June 11, 2003**

11 **through August 14, 2006.  While Boswell claims Private Label**

12 **engaged in negotiations for over a dozen contracts with it during**

13 **that period, Private Label contends these were solicited by**

14 **Boswell.  Boswell was the party that initially sought out Private**

15 **Label's business in New York.  Boswell however, cites**

16 **communication initiated by Private Label's president after**

17 **Boswell's initial reaching out, regarding multiple product**

18 **orders, proposed terms for future contracts, shipping terms,**

19 **payment terms, and arranged return of shipping bins.  Boswell**

20 **cites Private Label's choice to continue negotiations once a**

21 **relationship was established as reflecting continued business**

22 **dealings whereby Boswell purposefully sought to do business with**

23 **a New York customer.  Boswell refers to a letter it received from**

24 **Private Label's counsel on September 21, 2007 as proof of**

25 **existence of these negotiations by Private Label.**

26        **Private Label did not originally reach out to Boswell to**

27 **initiate a business relationship, rather Boswell solicited**

28 **business from Private Label.  This is similar to the California**

                                  **12**

plaintiff in *Roth v. Garcia Marquez*, reaching out to solicit business in Mexico.  *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991).  Plaintiff Boswell sought out customers outside of California and created a continuing product supplier relationship with Private Label.  Boswell suggests the existence of interstate negotiations supports a finding for purposeful availment.  This factor does not weigh in favor of purposeful availment.

### 2.  Location of Negotiations

Defendant Private Label contends that the location of the negotiations occurred either physically in New York, or that the negotiations were telephonic and mail communications.  Private Label had no negotiations in California.  Private Label was to ultimately receive tomato products at its New York Plant.  Boswell's solicitations included calls and visits from its South Carolina Sales Manager, Mr. Nestvogel; the use of a New York based broker; and visitation to Private Label in New York by Boswell's corporate executives from California.

Boswell claims that regardless of its representatives' physical locations, Private Label knew it was negotiating contracts with a California based company and chose to negotiate numerous contracts with Boswell.

"When a California business seeks out purchasers in other states . . . [and] deals with them by out-of-state agents or by interstate mail and telephone, it is not entitled to force the customer to come to California to defend an action on the contract."  *Roth*, 942 F.2d at 621-22 (quoting *Thomas. P. Gonzalez Corp.*, 614 F.2d at 1252).

13

In *Roth*, the plaintiff initiated negotiations and entered into a contract with the defendants, and claimed that negotiations went both ways, that phone lines were used in the other direction-i.e., the defendants made calls and returned letters and faxes he received in California.  *Roth*, 942 F.2d at 622.  The court recognized that many transactions take place solely by mail or wire across state lines but the communications did not support a finding of purposeful availment because "[B]oth this court and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"  *Id.* (quoting *Peterson v. Kennedy*, 771 F.2d at 1262); *see also Thomas. P. Gonzalez Corp.*, 614 F.2d at 1253-54 (although the plaintiff, a California resident, would suffer financial impacts in California, the parties' use of mail and wire to negotiate a contract was insufficient to establish the purposeful availment prong for personal jurisdiction in California).

To determine where negotiations take place, the location where the substance of the relationship was formed is considered. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (where a contract was determined to be negotiated in England, even when it was signed in California, "[T]he substance of the relationship was formed" in England).  The substance of the relationship here was formed by Boswell in New York.  Boswell hired a New York broker, as did the plaintiff in *Thomas P. Gonzalez Corp.*, where the plaintiff hired an agent in Costa Rica to form a relationship with a Costa Rican company.  *Thomas P.*

**14**

*Gonzalez Corp.*, 614 F.2d at 1249.  Boswell sent its East Coast Sales Manager and company executives to New York, as in *Roth*, where a representative traveled to Mexico to secure a contract. *Roth*, 942 F.2d at 621.

Negotiations between Boswell and Private Label are similar to the negotiations between the parties in *Roth*, because Boswell pursued and solicited Private Label's business in New York, and Private Label engaged in negotiations after this solicitation. Private Label's normal use of mail, telephone and email to negotiate with Boswell after Boswell specifically targeted Private Label's business in New York does not support subjecting Private Label to personal jurisdiction in California.  This factor weighs against a finding for purposeful availment.  The New York location of contract negotiations weighs against a finding for purposeful availment.

### 3.   Travel to Forum

No representative of Private Label has ever traveled to California in relation to this contract.  This factor weighs against a finding of purposeful availment.

### 4.   Negotiation Conclusion: *Naumes, Inc. v. Alimentos*

An Oregon District Court, in *Naumes*, was confronted with a similar situation to this case, where an Oregon pear seller claimed breach of contract by a Colombian buyer who had placed three orders for shipments of pears from Oregon to Columbia. *Naumes*, 77 F. Supp. 2d at 1160.  Other than two shipments, the Colombian corporation had not advertised, had no agents in, and had not done business in Oregon.  *Id.* at 1161.  There were

15

subsequent negotiations between the parties by telephone and facsimile transmissions, but none of the Colombian corporation's employees had ever been to Oregon. *Id.* The court found the plaintiff failed to make a prima facie showing that the defendant had purposefully availed itself of the privilege of conducting business in Oregon. *Id.* at 1163. The court identified relevant factors to determine whether "a defendant involved in a breach of contract for the sale of goods has purposefully availed itself of the forum's laws so as to justify the exercise of specific personal jurisdiction over the defendant," including:

> **(1) Who initiated the contact?**
> **(2) What where the goods' origination and destination?**
> **(3) What is the value of the goods involved in the disputed transaction?**
> **(4) How many contacts did defendant have with the forum?**
> **(5) Where did contract negotiation take place?**
> **(6) Are there prior dealings or future consequences anticipated between [the] parties that relate to the contract in dispute?**

*Id.*

Applying these factors, Plaintiff Boswell initiated most of the contacts with Defendant Private Label and solicited the sale of tomatoes in New York. The goods originated in California, and were destined initially for Buttonwillow, California where legal title was transferred to Private Label, but the goods were ultimately destined for New York. The value of the goods involved in the transaction is significant, with damage being an alleged $633,127.97. Defendant Private Label's contacts with California were limited, as Private Label dealt primarily with Mr. Nestvogel, a New York broker, and Boswell's executives in New York. Negotiations took place through phone, fax and emails.

16

Any in-person negotiations involved Plaintiff Boswell sending its top-level executives to New York or Mr. Nestvogel (Boswell's East Coast Sales Manager) to New York to attend negotiation meetings. Defendant Private Label's communications were responding to Plaintiff Boswell's contact to Private Label in New York.   Each contract is simple and straightforward with no future or prior consequences contemplated, except for the delivery of tomato paste products F.O.B. to the shipping point in Buttonwillow, California, and the return to California of the bins by Defendant Private Label, after use of the bins.   Prior negotiations weighs against purposeful availment.

### B.   Contemplated Future Consequences

The second of the four factors for determining purposeful availment is "contemplated future consequences."   This prong is inherently important, and may trump other considerations.   *See Roth*, 942 F.2d at 622.

In *Roth*, a film maker filed a breach of contract action against a Mexican author and his agent. The court found that the future consequences of the contract was the decisive factor since the contract involved the negotiation of movie rights for a film that would be produced wholly in California over an extended period of time.   *Id.* at 621 ("The point here is simply that [for] the contract . . . most of the work . . . would have been performed in California. . . . This is not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum; on the contrary, most of the future of the contract would have centered on the forum.").

17

1    In *Burger King*, the Supreme Court found purposeful
2   availment when a franchisee entered into a carefully structured
3   20-year relationship that envisioned continuing and wide-reaching
4   contacts with a Florida-based franchisor.  *Burger King*, 471 U.S.
5   at 480.  The Supreme Court considered the franchisee's "voluntary
6   acceptance of the long-term and exacting regulation of his
7   business from [the franchisor's] Miami headquarters," and
8   determined "the 'quality and nature' of his relationship to the
9   company in Florida can in no sense be viewed as 'random,'
10  'fortuitous,' or 'attenuated.'"  *Id.*

11   Unlike *Roth*, or *Burger King*, Private Label contends its
12  contracts with Boswell are simple.  These contracts are in
13  essence purchase orders for shipments of product, not long term
14  contracts with future consequences, nor do they contemplate
15  future transactions.  Unlike the franchisee in *Burger King*,
16  Private label has not voluntarily accepted long-term or exacting
17  oversight.

18   Boswell counters that Private Label contemplated the future
19  consequences of its contractual relationship when: Private Label
20  agreed to delivery of the product F.O.B. shipping point in
21  California; Private Label agreed to return Boswell's bins to
22  Buttonwillow; Private Label requested more product in the future;
23  and Private Label made payment at Buttonwillow.  Boswell also
24  cites the letter it received from Private Label's counsel on
25  September 21, 2007 which discusses and references the existence
26  of a historical course of conduct between the parties.  Boswell
27  contends these facts show Private Label's relationship with
28  Boswell cannot be viewed as "random," "fortuitous," or

**18**

"attenuated," and could be interpreted as purposeful availment of the privilege of conducting activities within California.

Although the contracts at issue are stand-alone separate purchase orders, the parties conduct and actions reflect contemplated future consequences.  This factor weighs in favor of finding purposeful availment.

### C.  Contract Terms

The third factor under purposeful availment concerns the contract terms.  Breach of contract terms by an out-of-forum party, and foreseeable resulting injuries to a forum-residing party may support a finding for purposeful availment.  *Burger King*, 471 U.S. at 480.  In *Burger King*, refusal to make contractually required payments in the forum-state was found to have caused foreseeable injuries to the franchisor in Florida.  *Id.*  The court held that "[I]t was, at the very least, presumptively reasonable for [the franchisee] to be called to account there for such injuries."  *Id.*

Contractual terms specifying F.O.B. in a forum state may support a finding for personal jurisdiction by the forum state over an out-of-state defendant, but on its own is not enough.  *Taubler v. Giraud*, 655 F.2d 991, 995 (9th Cir. 1981).

Boswell alleges Private Label breached its contracts' payment terms by failing to pay contractually agreed upon payments to Boswell in California.  Boswell argues it suffered foreseeable injuries in California from Private Label's failure to pay.  According to *Burger King*, such conduct makes it presumptively reasonable for Private Label to be called to account in California for such injuries.  *Burger King*, 471 U.S.

19

at 480.  Additionally, the F.O.B. terms in the contracts at issue support a finding for purposeful availment.  The contract terms weigh in favor of purposeful availment.

### D.  Actual Course of Dealing

The last purposeful availment factor is the parties' course of dealing.  If the parties course of dealing reflects repeated confirmation that a forum-based party's actual decision-making authority was vested in the forum, it supports a finding of purposeful availment of the non-forum-based party in the forum. *Id.* at 480-81.

In *Burger King*, the franchisee alleged it dealt with a local Michigan-based office of the franchisor, and therefore, did not purposefully avail itself of any benefits in the franchisor's headquarters' location in Miami, Florida.  *Id.* at 480.  The Supreme Court noted that although the franchisee claimed he was dealing with the franchisor only in Michigan, actual course of dealing reflected that the franchisor's office in Michigan "served largely as an intermediate link" between Michigan and Miami, the location of the franchisor's office.  The Supreme Court found the franchisee had purposefully availed himself to Florida's personal jurisdiction noting:

> When problems arose . . . [the franchisee] learned that <u>the Michigan office was powerless</u> to resolve their disputes and <u>could only channel their communications to Miami</u>. Throughout these disputes, the Miami headquarters and the Michigan franchisee carried on a continuous course of direct communications by mail and by telephone, and it was the <u>Miami headquarters that made the key negotiating decisions out of which the instant litigation arose</u>.

*Id.*, at 480-81 (emphasis added).

1    Private Label contends negotiations were conducted with
2    Boswell's sales representative, Mr. Nestvogel, located in South
3    Carolina; or with two of Boswell's executives who traveled to New
4    York to solicit Private Label's business.  Both Private Label and
5    Boswell agree that Mr. Nestvogel carried out many of the
6    negotiations with Private Label.  Unlike in *Burger King*, when
7    problems arose, Private Label did not channel communication
8    directly to Plaintiff Boswell in California by mail, telephone,
9    or any other medium.  Instead Defendant Private Label continued
10   communications with Mr. Nestvogel in South Carolina.  Mr.
11   Nestvogel had decision-making authority so Private Label did not
12   have to channel its communications directly to California.
13   Boswell contends however that Private Label knew it was not only
14   dealing with its New York broker, but it was conducting business
15   with a sales representative of a California company, albeit South
16   Carolina-based.  These facts evidence the parties' course of
17   dealing reflecting that Boswell made no effort to relate the
18   transaction to California.

19   The actual course of dealing weighs against a finding for
20   purposeful availment.  Weighing the factors, the purposeful
21   availment prong is met.

22   **2.   Arising Out Of Or Relating to Forum-Related Activities**

23   "The second prong of the specific jurisdiction test is met
24   if 'but for' the contacts between the defendant and the forum
25   state, the cause of action would not have arisen."  *Terracom v.*
26   *Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995), (quoting
27   *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-86 (9th Cir.
28   1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).  The

contacts leading to the contracts were in New York by Boswell, a California LLC.   To the extent California tomato paste was to be shipped, and payment received by Boswell, the transactions arise out of forum related activities.   This prong is satisfied.

     3.   _Reasonableness_

     The third prong of the test, reasonableness, is presumed once the court finds the first purposeful availment prong. _Ballard v. Savage_, 65 F.3d 1495, 1500 (9th Cir. 1995) ("[W]e presume that an otherwise valid exercise of specific jurisdiction is reasonable.").   The burden of proving unreasonableness shifts to the defendant.   _See id._   In order to defeat personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable._"   Burger King_, 471 U.S. at 477.   The strength of a purposeful availment showing versus a reasonableness showing are closely correlated.   William Schwarzer, et al., Cal. Prac. Guide: _Federal Civil Procedure Before Trial_, Ch. 3-58 (The Rutter Group 2005) ("The weaker the plaintiff's showing of purposeful availment and relatedness to forum related acts, the less a defendant need show in terms of reasonableness to defeat jurisdiction; and vice versa.") (citing _Burger King_, 471 U.S. at 477).   However, "Defendants must show that any asserted unfairness could not be alleviated by less restrictive means such as conflict of law rules or an accommodating venue transfer."   _Doe v. Geller_, 533 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) (citing _Burger King_, 471 U.S. at 476-78).

Jurisdiction is reasonable if "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *FDIC*, 828 F.2d at 1442.   The Ninth Circuit applies a seven factor test to ascertain reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Harris Rutsky & Co. Insurance Services Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).   Private Label has not presented a compelling case that California jurisdiction is unreasonable.

> A.   Purposeful Interjection into California's Affairs

Although a court may have found purposeful availment by a non-resident party, "[T]he degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction under this prong." *Harris Rutsky*, 328 F.3d at 1132 (9th Cir. 2003)(citing *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)).   A contract alone is not sufficient to establish purposeful interjection into a forum state. *FDIC*, 828 F.2d at 1443 (citing *Burger King*, 471 U.S. at 478-79; *Hirsch*

*v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1480 n.3 (9th Cir.
1986)).  Instead, "[T]he negotiations and contemplated future
consequences of the contract ( i.e., whether continuing contacts
with California were envisioned) must be considered in analyzing
[a defendant's] purposeful interjection of its activities into
California."  *Id.* (citing *Burger King*, 471 U.S. at 479).

Boswell contends Private Label engaged in numerous
negotiations and contemplated future consequences when Private
Label agreed to delivery of the product F.O.B. at Buttonwillow,
California.  Additionally, Boswell cites other actions by Private
Label as evidence of contemplated future consequences due to
their contractual relationship.  These include: Private Label
agreeing to return Boswell's bins to Buttonwillow, California;
Private Label's requests to purchase additional product in the
future; and Private Label's payments to Buttonwillow, California.
Boswell also cites the letter it received from Private Label's
counsel on September 21, 2007 which discusses the parties "course
of dealing established by the parties."

Private Label contends it did not interject itself into
California's affairs because it was solicited by Boswell in New
York through a New York based broker, Boswell's East Coast Sales
Manager, and Boswell's executives who traveled to New York.
Private Label contends it negotiated these contracts in New York
and that the bulk of all communications either occurred with
Boswell's New York Broker, or with Mr. Nestvogel who was in South
Carolina.

The parties' negotiations and communications reflect that
Private Label contemplated continuing contacts with California.

**24**

The contracts at issue are simple one-time purchases, by which Private Label has used Boswell's services a total of twelve times. *See FDIC*, 828 F.2d at 1443 (where the Ninth Circuit found no purposeful interjection and noted "[N]o future relationship was contemplated; the contract was simply a one-time agreement"). However, although the contracts themselves do not mention any long term agreement, negotiations and contemplated future consequences of the contracts between the parties reflect envisioned continuing contacts with California.  This factor weighs in favor of finding California jurisdiction reasonable.

> **B.   Non-Resident's Burden on Litigation in Forum State**

The second factor under the reasonableness prong, is concerned primarily with the burden on defendant in litigating in the forum states.  *Ins. Co. of N. Am.*, 649 F.2d at 1272.  Private Label contends the burden for it to defend in California is high because it has no offices, employees, agents, or representatives, in the State of California, and it does not visit the state regularly.  Private Label has its principal place of business in New York.  *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (where the Ninth Circuit found this factor weighed slightly in favor of a New York defendant against litigating in Arizona, but that any burden is substantially less than in days past).  However, courts have found that modern advances in communications and travel have sufficiently reduced the burden of litigating outside of a defendant's home state. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("In this era of fax machines and discount air travel, requiring the partnership to defend itself in California . . . would not be so

unreasonable as to violate due process."). Although Private Label claims it would be an extremely heavy burden for it to litigate in California, transportation and technology will mitigate the burden.

### C.   Conflict With Sovereignty

This factor does not need to be considered except when foreign participants are litigating. *But see Amoco Egypt Oil Co. v. Leonis Navigation. Co.*, 1 F.3d 848, 852 (9th Cir. 1993) ("Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction") (citing *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985)).

### D.   Forum's Interest in Adjudicating Dispute

This factor weighs in favor of Plaintiff Boswell because California does have a manifest interest in adjudicating disputes such as this where one of its citizens is harmed. *Burger King*, 471 U.S. at 473; *Cal. Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356, 1363 (9th Cir. 1986) (noting that the State of California has a strong interest in protecting the rights of its injured citizens).

### E.   Most Efficient Judicial Resolution of the Controversy

Efficiency of forum, the fifth factor, is evaluated by looking at where the witnesses and the evidence are likely to be located. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Private Label contends the most efficient forum is New York because the negotiations for the contracts took place

in New York, after which the executed contracts were sent to California, and more witnesses are in New York.   Private Label notes Boswell's sales broker is in New York, and Mr. Nestvogel is in South Carolina.   This factor cuts both ways as evidence and witnesses will be located in New York and California.   However, an important witness, Boswell's New York broker, is located in New York.   This factor weighs in favor of Defendant Private Label.

> **F.    Importance of Forum to Party's Interest in Convenient and Effective Relief**

The Ninth Circuit has noted that "[T]his factor is 'not of paramount importance.'"  *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (citing *Harris Rutsky*, 328 F.3d at 1133).   Plaintiff Boswell claims this factor weighs heavily in its favor as it is located in the forum state, and California is well suited to provide relief for breach of contract injuries suffered by its citizens.   However, Boswell has shown in the past that it is not inconvenient for its representatives to travel to New York, nor is there a showing that there will be a lack of effective relief in New York as no issue is raised of unenforceability due to lack of a foreign jurisdiction.  *See Haisten*, 784 F.2d at 1402 (where Ninth Circuit noted that plaintiff's claimed unenforceability due to foreign jurisdiction could be overcome by posting bond).   Boswell has not shown the contract breach action cannot be remedied in New York. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200-01 (9th Cir. 1988) (where the plaintiff did not show misappropriation

27

could be effectively remedied in an alternate forum).  This factor is neutral.

### G.  Existence of an Alternative Forum

"The plaintiff bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky*, 328 F.3d at 1134 (citing *Nobel*, 11 F.3d at 1490).  Boswell has not met this burden here.  However, Boswell does not need to meet this burden since this factor cannot overcome the other factors which favor the forum state*. Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986) ("[T]his factor cannot overcome the others which favor [the forum state's] jurisdiction.").

Applying the seven factors, jurisdiction is reasonable; and any concerns regarding unfairness are alleviated through an accommodating venue transfer.  *See Doe v. Geller*, 533 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) (citing *Burger King*, 471 U.S. at 476-78).

Applying the three-prong specific jurisdiction test to determine personal jurisdiction results in a finding of personal jurisdiction over Defendant Private Label.

Defendant's motion to dismiss on the basis of the lack of personal jurisdiction is DENIED.

### 6.  Motion to Transfer Venue Analysis

Defendant Private Label alternatively brings a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

28

action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2008).

Defendant argues that transfer of this action is warranted because the Western District of New York is the venue where Private Label has its principal place of business, where the business relationship at issue was negotiated and entered into, where key witnesses reside, including Plaintiff' New York broker, and the action would be litigated more inexpensively in New York.

The decision whether to transfer venue lies in the discretion of the district court. *GNC Franchising*, 211 F.3d at 498.  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843.

In ruling on a motion to transfer, a district court must consider each of the factors enumerated in § 1404(a): convenience of the parties, convenience of the witnesses, and the interests of justice. *Ventress*, 486 F.3d at 1118.  "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *GNC Franchising*, 211 F.3d at 498 (citation omitted).  "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Id.*  The court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two

29

forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-499.

"As part of this inquiry, the court should consider private and public interest factors affecting the convenience of the forum." *Decker Coal*, 805 F.2d at 843.  Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The party seeking transfer bears the burden of showing the balance of convenience clearly favors transfer.  *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  Transfer of venue under the law of the Ninth Circuit based on forum non conveniens pursuant to section 1404(a) is "an exceptional tool to be employed sparingly."  *Ravelo Monegro v. Rosa*, 211 F.3d 509,

514 (9th Cir. 2000).  A strong presumption exists in favor of the plaintiff's choice of forum.  *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995).

*Relative Ease of Access to Sources of Proof*

The location of the relevant documents and sources of proof weigh in favor of transfer.  The negotiations primarily took place in each party's respective home states.  However, these were coupled with several meetings in New York, but the agreements were negotiated in the modern-age of technology, through telephone calls and e-mails.  The relevant documents and any sources of proof are located in both California and New York.  There is no indication that prohibitory costs in exchanging relevant documents favors one party's forum over the other.  This factor weighs evenly for either forum because it is easy to access any of the required documents in either state.

*Availability of Compulsory Process for Attendance of Unwilling Witnesses*

Neither party presents evidence of unwilling witnesses who would require the Western District of New York District Court or the Eastern District of California District Court to compel their attendance or be unable to compel them to testify.  Boswell's broker is in New York, so compulsory service would be available in New York over this witness but no indication is given that this witness is hostile.  Boswell's Sales Manager is in South Carolina and may be deposed there.  He cannot be compelled to appear at trial in New York or California.

*Cost of Obtaining Attendance of Willing Witnesses*

31

Defendant Private Label contends key witnesses are located primarily in New York, including its executives and Plaintiff Boswell's East Coast Sale Manager (located in South Carolina). Plaintiff Boswell contends its employees are located in California.  Neither party has provided details of the testimony these witnesses will cover.  Party witnesses presumably will be able to testify and less weight is given in determining convenience of party witnesses.  The fact that both parties have witnesses in each of their respective states provides no weight in either's favor in terms of convenience of parties' witnesses.

Private Label also identifies Boswell's New York produce broker as a non-party witness.  This sole non-party witness's presence at trial will be more convenient in the Western District of New York.  *See Gundle v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) ("It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight.").

*Practical Problems That Make Trial of a Case Easy, Expeditious And Inexpensive*

The purpose of U.S.C. 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).  However, transfer will not be allowed merely to shift the inconvenience from one party to another.  *Decker Coal*, 805 F.2d at 843.  The party seeking transfer bears the burden of showing that after applying these factors, the balance of convenience clearly favors transfer.  *Futures Trading*

*Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Private Label requests venue be moved from California to New York to avoid the unnecessary inconvenience and expense it contends would occur if travel is necessary from Private Label's principle place of business in New York. Additionally, Private label asserts key witnesses including Plaintiff's sales broker reside in New York and most of the events giving rise to the claims at issue occurred in New York, and therefore, unnecessary cost and inconvenience would be incurred if Private Label was forced to litigate in California. Because Boswell has pursued Private Label's business by sending agents to New York, telephoning Private Label, and hiring a New York broker, it is clear New York jurisdiction will not merely shift the burden to Boswell as Boswell has demonstrated no burden in doing business in New York.

As for the means of the parties, there is no indication by either party that it is financially incapable of litigating this matter in either forum. Although Private Label states that it would face financial hardship, neither party raised the issue of financial inferiority in oral argument. Private Label does not contend that it is a smaller company in comparison to Defendant Boswell, though it does state in its accompanying declaration that the company is a family-owned business with two shareholders, husband and wife, Frank and Bonnie Lavorato, who founded the company. (Doc. 8, Lavorato Decl. ¶¶ 3, 6.) Private

Label contends that it will be extremely time consuming and expensive to defend itself in California due to the travel and time required by the president of the company.  *(*Lavorato Decl. ¶ 23.)  When a disparity exists between the means of the party, the court may consider such means in determining where the suit should proceed.  *See Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 290 (D. Del. 1986) (small company in process of liquidation with only 16 employees); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994) (ICF had been in business less than a year with a single place of business, while 800-Flowers had offices nationwide, with far greater capital).  Private Label's assertion that it would be financially difficult for it to litigate in California slightly favors a transfer of venue to New York.  There do not appear to be an any other practical problems favoring one jurisdiction over the other.

> *Administrative Difficulties Flowing From Court Congestion*

The court congestion is arguably higher in the Eastern District of California, which has one of the highest case loads in the country.  A New York action will face less court congestion and delay.

> *Local Interest*

California has an interest in having this controversy decided in California.  *See Naumes*, 77 F. Supp. 2d at 1164 (where the court noted because goods originated in the forum, the forum has an interest in adjudicating the dispute).  Plaintiff Boswell is a company located in California, claiming harm.  California has an interest in deciding this case.  *Burger King*, 471 U.S. at

**34**

473 ("A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); *see also Lee v. Corr. Corp. of Am.*, 525 F. Supp. 2d 1238, 1245 n.6 (D. Haw. 2007) (where the court found proper jurisdiction in Mississippi but noted that Hawaii possessed an interest because the action involved a Hawaii inmate).

*Interest in Having the Trial of a Diversity Case in a Forum That is at Home With the Law That Must Govern the Action*

The agreement itself does not provide for the application of either state's law, or for a choice of forum.  There is no clear indication in the contract language that the parties intended to have either state serve as the forum for litigation.  The contract fails to specify the parties' choice of "venue" or "jurisdiction."

The Ninth Circuit has held that a "federal court exercising diversity jurisdiction, [applies] California's choice-of-law principles to determine the body of substantive law that applies to [the] interpretation of [a contract]." *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Absent an express choice of applicable law by the parties, California law states "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Cal. Civ. Code § 1646 (2008).  Due to the F.O.B. terms of the contracts at issue, delivery of the goods was called for in California, as was

35

payment.   Performance was to take place in California.
California has an interest in applying California Law.

*Decision on Transferring Venue*

The following factors weigh against transfer of venue: a
California district court is more familiar with applicable
California state laws, albeit this is a simple contract dispute;
plaintiff's choice of forum is to be given weight.

The following factors weigh in favor of transfer of venue to
New York to serve the interests of justice and convenience of
parties: the agreement was negotiated in both states but
in-person meetings occurred in New York; the convenience of party
witnesses is slightly more burdensome to Defendant Private Label
if jurisdiction is in California; the convenience of the parties
in terms of financial burden weighs slightly in favor of
Defendant Private Label; and the New York federal court is less
congested.

The California District Court has federal subject matter
jurisdiction under 28 U.S.C. § 1332: The parties are citizens of
different states and more than the jurisdictional amount is in
dispute.   One of the parties to the contract is a California
corporation.   The contract was partly performed in California.
There is no legal impediment to a § 1404(a) transfer, as the
original suit could have been brought in New York.   Sufficient
California contacts exist to provide personal jurisdiction over
Private Label, by reason of its contract with Boswell which
Private Label knew was headquartered in California, and both
delivery and payment were in California.

36

1
2
3

**It is appropriate to grant Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a).  Defendant's motion to transfer venue is GRANTED.**

4

**7.   CONCLUSION**

5

**For all the reasons stated above,**

6
7

**Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED.**

8
9

**Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED.**

10
11

IT IS SO ORDERED.

12

**Dated:    July 31, 2008**                    _____/s/ Oliver W. Wanger_____
                                           UNITED STATES DISTRICT JUDGE

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

37
